DREW, Chief Justice.
By the appeal in this cause there is presented for review a final decree of the Circuit Court for Pinellas County validating two series of revenue bonds in issues of $4,000,000 and $1,650,000 'for construction of a sewer system, upon petition of the appellant Boca Ciega Sanitary District. The obligations are payable solely from anticipated revenues and special assessments accruing to the District.
The appellant District, according to recitations of the decree, was duly created in May 1961 upon referendum vote by residents of the proposed district and confirming resolution of the Board of County Commissioners of Pinellas County pursuant to Chapter 59-466, Laws of Florida, constituting Chapter 153, Part II, Florida Statutes, F.S.A. The decree also recites compliance with all provisions of F.S. Chapter 75, F.S.A., required preliminary to the institution of suit for validation of the obligations in question on November 9, 1962.
Among the complicating factors involved in the current dispute are the intervening annexation of certain District lands by the Town of Largo between May and December of 1962, and the existence of a 1959 agreement between the Town and County allocating to the former the right of exclusive water service within specified areas then outside the municipal limits, in reliance upon which the Town issued revenue bonds, validated in February 1961, to cover improvements to its joint water-sewer system.
Appellant contests only those provisions of the decree which exclude from the District certain lands included within its original boundaries (alleged by appellees to be the same as those covered by the water service agreement, supra, a part of which have subsequently been annexed by Town of Largo) and enjoining the use of any ad valorem tax proceeds “directly or indirectly” to pay these obligations or contribute to reserve or sinking funds in this connection. By cross-appeal the appellees, Town of Largo and several named individuals, controvert the decree insofar as it sustained the authority of the District to issue the bonds, the propriety of the procedures by which the District was formed *531 and the validity of the enabling legislation, F.S. Chapter 153, F.S.A., supra, under which it was created. Appellees assert that the statute collides with Article III, Section 16,[1] and Article IX, Sec. 6 [2] and 7,[3] Florida Constitution, F.S.A. The contention is made initially that the court erred in expressly sustaining the validity of the law in its decree after limiting argument of counsel in the course of the hearing and denying the proffer of authority on the point. The constitutional issues, however, are fully briefed before this Court and relate to matters of law exclusively. We accordingly proceed to the merits of the attack on the statute.
Argument is directed primarily to F.S. Sections 153.60 [4] and 153.81,[5] F.S.A. The first section merely defining a district created under this act as a “body corporate and politic,” and the second providing for levy of a special ad valorem maintenance tax not exceeding five mills “to pay for the maintenance and operation and other corporate purposes of said district.”
Upon a thorough review of the decisions cited on the constitutional issues,[6] we find no persuasive reasoning or authority for the appellees’ assertion that Chapter 153 does not sufficiently define the public purposes of the districts authorized, or that the provision for a limited tax levy for maintenance purpose allows indirect funding of district revenue bonds contrary to Article IX, Section 6, of the Constitution. Neither do the decisions point to any fatal defect in statutory entitlement by omission of the eleven-point catalog urged here, even if this failure should at this point be considered material.[7] The decree sustaining the legislation against these attacks must therefore be affirmed.
Of determinative significance in the disposition of the remaining issues is that portion of the statute, Sec. 153.58, requiring publication of estoppel notice upon creation of a district and providing explicitly as follows :
“ * * * any action or proceeding of any kind or nature questioning the validity of the creation and establishment of said district, including but not limited to, the exclusion or inclusion of lands therein, or other pertinent matters, shall be commenced within twenty days after the first publication of such notice in the circuit court in and for the county. If no such action *532 or proceeding shall be commenced or instituted within twenty days after the first publication or posting of such notice, then all taxpayers, property owners or persons residing within said district or any other interested parties, public, private or corporate within the county and all the persons whatsoever shall be forever barred and foreclosed from instituting or commencing any action or proceedings which question the validity of the creation and establishment of said district and the boundaries thereof(Emphasis supplied.)
The record in this cause indicates full compliance with this section in the creation of the appellant District. We believe that, in the face of this provision, the treatment of District boundary issues in this proceeding was manifestly improper. The factual circumstances relied on by ap-pellees do not, in our opinion, require a contrary conclusion. The statute contains no absolute requirement that potential municipal service or mere proximity to city facilities of any nature shall preclude incorporation of given areas within a projected district. Municipal rights in that portion of the District covered by the pre-existing county contract, supra, relate exclusively to water service while District authority in this case is limited to sewers, and we find no substance to the contention that the District boundary description was made ambulatory so as to be subject to alteration by municipal annexation. The description of District boundaries as extending on one side to the Town of Largo would, under ordinary rules of construction, incorporate the area up to the Town boundary line then existing. The statute obviously contemplates stability of district boundaries in this respect. We are not persuaded that the evidence pertaining to certain alterations of District plans subsequent to its creation, and to the contracting procedures employed by it, amounted to such abandonment or breach as to invalidate either the initial district referendum or other actions controverted herein.[8]
For the foregoing reasons, that portion of the decree excluding from District jurisdiction “all those lands within Section 2-30-15, Section 3-30-15 and Section 4-30-15” should be stricken. The further provision expressly enjoining the use of ad valorem tax proceeds “directly or indirectly” in connection with the obligations here involved is in our opinion unnecessary and improper in this proceeding and should be omitted, in view of the clear adjudication that the obligations do not pledge or unlawfully encumber the ad valorem taxing power.[9] The decree, subject to these modifications, should be affirmed.
It is so ordered.
THOMAS, THORNAL, O’CONNELL and HOBSON (Ret.), JJ., concur.

. “§ 16. Acts; one subject; expressed, in title * * * which subject shall be briefly expressed in the title * *

. “§ 6. Bonds; * * * the Counties, Districts, or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by * * * the freeholders * *

. “§ 7. Taxing for benefit of chartered, company prohibited, No tax shall be levied for the benefit of any chartered company of the State, nor for paying interest on any bonds issued by such chartered companies, or by counties, or by corporations, for the above-mentioned purpose.”

. “153.60 * * * Such district shall be a body corporate and politic, exercising essential governmental functions and shall have the power to sue and be sued; to contract * * *.

. “153.81 * * * any district is authorized to levy a special acl valorem maintenance tax of a sufficient number of mills upon the dollar of assessed valuation of property subject to taxation in the district to pay for the maintenance and operation and other corporate purposes of said district; provided, however, that such special maintenance tax shall in no event exceed five mills during any one year. * * * ”

. Adams v. Housing Authority of City of Daytona Beach, Fla.1952, 60 So.2d 663; Gardner v. Fuller, 1945, 155 Fla. 833, 22 So.2d 150; Yon v. Orange County, Fla. 1949, 43 So.2d 177; State v. Florida State Improvement Commission, Fla. 1952, 60 So.2d 747; State v. Andrews, Fla.1959, 113 So.2d 701.

. 30 Fla.Jur., Statutes, Sec. 48. The appellants list eleven matters covered by the act which they contend should have been specifically enumerated in its title. Such an index, however, is clearly beyond constitutional notice requirements.

. As to scope of inquiry in bond validation proceedings, see 26 Fla.Juris. 477. Also see National Air Lines v. County of Dade, Fla.1954, 76 So.2d 277; Atlantic Coast Line Ry. Co. v. Lakeland, 130 Fla. 72, 177 So. 206; Chase v. City of Sanford, Fla.1951, 54 So.2d 370; State v. City of Miami, Fla.1958, 103 So.2d 185.

. Cf. State v. Halifax Hospital District, Fla.1963, 159 So.2d 231, opinion filed December 18, 1963.